A c c to one six zero. Michael Kitchen vs Gretchen Whitmer at all, audience rating 15-15, insiders excise. This is here for a color. Good morning, your honors. May it please the court. Assistant Attorney General Joshua Smith on behalf of appellants, and I'd like to reserve five minutes of time for rebuttal if I may. We are asking this court to reverse the district court in this case for three reasons. First of all, the decision in Heck bars plaintiff's claim under 1983 because plaintiff effectively and the district court effectively shortened the minimum term of his sentence. Second, the Supreme Court's decision in Graham does not prohibit a term of year sentence. And third, to the extent it does apply to a term of year sentence, Graham does not prohibit the 42-year sentence that was imposed in this case because it is not a de facto life sentence. Now my brief also covered a standing and a Rooker-Feldman issue, and of course I'm happy to answer the court's questions on those, but at this point I'm going to rest on my brief on those issues. Your brief is written in a way that suggests you think you forfeited the Heck issue. Do you think you did or not? I don't think that we did, your honor. And you're right, the brief is effectively written as if this is an unpreserved issue, and oddly enough our reply brief is written in such a way that argues that it has been preserved. But you're not supposed to raise new arguments in your reply brief, so why haven't you forfeited any argument that it's not forfeited? In my client's first motion to dismiss, your honor, they raised the Heck issue, and that was ECF 15. The court addressed that issue, the court I agree with you that it's not obvious to me that it is forfeited, but I'm surprised to see that you didn't argue that in your opening brief. Understood, your honor, and I think that that, in retrospect, would have been a better argument to make, because I think it's more persuasive than either the jurisdictional argument, which we did make, or the fact that it's a jurisprudentially significant question that this court should take up in the interest of justice. Let me ask you about the district court a little bit. I find a couple of things puzzling. So you filed a motion to dismiss on subject matter jurisdiction, that was the Heck issue, along with a motion for summary judgment, as I recall, or something called a motion for summary judgment, which is odd. But eventually the judge, my understanding is the judge rejects the Heck argument, the judge, their amended complaints filed, the judge at one point says, I only want to hear about two issues, equal protection and due process, something like that. So I don't want to hear about the Heck issue, I take it, so you're thinking that's it for Heck, right? Then the final, whatever it was, the third amended complaint, she says basically you get one more dispositive motion in the case, so you withdraw it to make a motion for summary judgment post-discovery, which seems like a reasonable litigation strategy to me, and I'm not sure why you were limited to one more motion. I know the Eastern District of Michigan has some weird procedural rules that we've kind of commented on in the past, but put that aside. Why didn't you put something in the final motion for summary judgment about Heck? Just a footnote or something that says, oh, by the way, we still think this is a live issue, we understand the court's rejected it, but we want to bring it to the court's attention. I think that the issue was already preserved at that point because it was law of the case. But you do correctly point out, I don't think it was law of the case, you can change your mind, right? The district court could have changed their mind about the Heck issue at any time. Law of the case is if a higher court has a ruling and then it binds you in later proceedings below, right? That's what law of the case is. It's not law of the case, it's just something, it's a ruling she made that it looks to me like she wasn't willing to revisit, but I don't know. You had discovery, so, and you had one more dispositive motion, so I'm surprised it didn't appear in some form in that motion. Understood, Your Honor. I do think that law of the case can apply to a district court's own position for later in the litigation, but I'll move that to the side. We could have raised it in a footnote, but the court had clearly indicated at that point that it didn't want to hear that issue and it wanted to hear certain other issues. Because the court had already decided it, we felt that it made sense not to raise that issue again. There's nothing that requires a litigant to continually raise the same issue once a court has denied it. And I can understand why a district court, should the sheer volume of arguments that it gets from the parties, and in this case, would not want to hear that argument. And then your notice of appeal, I noticed referenced specifically the initial order and the later order. So I take it you thought, okay, we're appealing the heck issue. Yes, Your Honor. But then we get the bizarre opening brief that seems to suggest it was forfeited. So I'm completely confused. And I will admit and apologize, that does seem confusing when you read the brief. I believe that the issue was preserved. Now to the extent that the court disagrees and does not believe the issue was preserved, we do have some arguments why the court should consider the issue. Well, let me ask you about that. You had a question about this? Okay, so heck. So we get the question then, if it's forfeited, I suppose it could be jurisdictional, although I'm skeptical about that. There's also this middle ground argument, I take it that, let's say it's not jurisdictional, but the law is the only way you can bring this cause of action as a habeas claim. And so, maybe I didn't forfeit the argument, but I can't recognize a cause of action, it would be wrong for me to recognize a cause of action or analyze this as a cause of action under Section 1983. Is that possible? Yes, Your Honor. I mean, effectively, I'm going to answer the question as I interpret it, and forgive me if I misinterpreted it. But my understanding of your question is, why can't this court entertain whether heck is a bar 2 plaintiff's claim in 1983? Is that a fair assessment, Your Honor? If it's not jurisdictional. If it's not jurisdictional, and it's forfeited, are we basically left with a hypothetical 1983 claim that we then resolve a constitutional issue on the merits? I think that's the conundrum, because effectively, if that's held as forfeited or waived for appeal, now preservation is a prudential rather than jurisdictional doctrine. So one of the reasons this court should take up that issue is it is a key issue. This circuit has not opined on that, not in a published decision. And all of the states in this circuit and the district courts in this circuit, it would be helpful for them to have guidance on that. And this court, this issue has been briefed by the parties. I think it's been briefed pretty well and presented to this court. So for that reason, I think that this court can take that issue. So proceeding to the merits, so we have case law, to the merits of the heck issue. We have case law that suggests that heck is not a bar if it doesn't necessarily invalidate the conviction or necessarily invalidate the sentence. I think it's Hilde Snyder was the key language that uses the adverb necessarily. Would you distinguish Hill? How would you deal with that language? Because all Kitchen is asking for is a parole hearing, which may or may not shorten the sentence. So why would the necessarily be satisfied here? Yes. And I'm going to preface that and then answer the Hill question because I think the preface is directly related, Your Honor. Michigan law has a feature. One of the features is under 791.234, the minimum term of the sentence. Once that's served, a prisoner becomes eligible for parole and under the jurisdiction of the parole board. So effectively, if you decrease or, excuse me, shorten the period with which a defendant or, excuse me, a prisoner is eligible for parole, you necessarily shorten the minimum terms of his confinement. And that is necessarily a challenge to the validity of the sentence that was originally imposed. That's distinct from the situation in Hill. Now in Hill, there were several claims before this court, several counts. And the court went through each of the counts. Some of the counts the court held that because it was a challenge to the underlying sentence itself, that that had to be brought in habeas. There were several other issues that concerned parole procedures that sounded in 1983. Specifically, whether programming was available to rehabilitate youthful offenders so that when they were paroled, they could do something. They had a skill. They had a coping mechanism. One of the other things was whether the good time credits applied. Now my understanding in Hill was that if the good time credits were applied, that that would have an effect on their parole date. That is the date on which they became eligible for parole under the jurisdiction of the Michigan Parole Board. That's a challenge to the parole procedures. It's not a challenge to the underlying sentence. Now in this case, the district court and Mr. Kitchen's counsel have phrased this in terms of, he's not asking for a decreased sentence. This is like Hill. He's asking that he be eligible for parole. And that doesn't affect the validity of the underlying sentence. In Michigan, it does. Because a prisoner does not come under the jurisdiction of the parole board unless and until he or she has fulfilled the minimum terms of his or her sentence. Would that just as easily be characterized as an as-applied challenge to the parole statute that says that you have to wait until your minimum term is served before you can be considered for parole? I think that would be a different challenge than what Mr. Kitchen has made. But under that interpretation though, I would still maintain that because of the way Michigan sentences defendants or prisoners, that that necessarily calls into question the minimum sentence that's applied. That might not be applicable in all states, but that is the case in Michigan. That you're under the jurisdiction of the parole board once you have served the minimum term of sentence, Your Honor. So in Michigan, you cannot bring a 1983 action, but in another state that doesn't have indeterminate sentences, you would be able to? It would have to depend on the interplay of federal and state law, Your Honor. So yes. In every state, states have the authority to set basic guidelines on sentencing and on criminal statutes. And the federal court's job, of course, is to determine whether those standards meet the Constitution. But there still is an underlying respect for the ability of states to make those determinations. Now in this case, again, that sentencing and parole statute, and I believe it was in Robinson, this court held that they're one and the same. I was going to say, can you separate them? So a state court judge who sentences a defendant in Michigan, when the state court judge sentences them to a term of years, isn't the state court judge saying the years are, it's effectively saying 42 years without parole to 65 years, and then the parole period is in between the two? I think that's a fact. Is it actually in the state judgment, when the individual is sentenced, that it says 42 years until eligibility for parole? Or is it just the background Michigan principles kind of globbed onto that state conviction, and they work together that way? I cannot opine on whether it's present in judgments, in each individual criminal judgment. But what I can say, it's part of the Michigan sentencing statute. So what you said initially, Your Honor, is exactly right. When a judge sentences a youthful offender, like Mr. Kitchen, to a 42 year minimum term, effectively that means he's not going to be eligible for parole until the expiration of that minimum term of sentence. But that is because of the operation of the parole statute. Well, in Michigan, the distinction is that they're one and the same. The parole statute and the minimum sentencing statute are the same thing. And under the heck line of cases, when you challenge that underlying sentence, What do you mean by they're the same thing? If you look at the statute, and I believe the one at issue here is MCL 791.234, if I'm mistaken on the exact site, it is in our brief. But that effectively states that a prisoner is dissatisfied, Your Honor. Right, but that's the parole statute. It's also the minimum sentence statute. And what I mean by that is, you're not under the jurisdiction of the parole board unless and until that minimum sentence has been served. Yes, I think we agree on that. But you're saying that, I mean... I'm positing that it's the operation of the parole statute that tells you that you're not subject to the jurisdiction of the parole board until you've served your minimum sentence. Yes, Your Honor, I understand. Okay, but that's the parole statute. And again, I understand the point that you're making, but what the district court here did, and you have to under Michigan law, if you're shortening the date or the duration until you're eligible for parole, that necessarily shortens the minimum term of sentence. And I think that's the distinction why it falls under a habeas action rather than a 1983 action. If Mr. Kitchen were challenging particular parole procedures as applied to him rather than the minimum sentence, then he might have a 1983 action. But under Michigan law, when you come under the jurisdiction of the parole board, it's because you've served that minimum sentence. But why is it not possible to say that that statute is unconstitutional when applied to certain minors? Why is it not possible, Your Honor? Well, if I may, it's certainly possible because that's certainly what the district court effectively held, I think. But I think it's wrong, or a wrong interpretation of the law, because the heck line of cases clearly states that if it's a challenge to the underlying sentence, that it has to be brought in habeas. And what the judge did by shortening the duration until Mr. Kitchen is eligible for parole, it necessarily shortened the duration of his sentence. So they are running the same under Michigan law. Only if you accept that the parole statute needs, that the parole statute applies in this situation. I mean, if you say that it's unconstitutional as applied to certain minors, and then you have to look at the facts, it's not necessarily lowering that sentence. It's saying that these minors don't have to wait until they've served their minimum sentence, that there's an overriding constitutional mandate that says that they don't have to wait until they've served their minimum sentence. With respect, Your Honor, I think that that's essentially conflating two things. And that's, I think the district court would agree with that, that that's exactly what happened here. But it is different, because again, the only way under Michigan law to get to the parole board's jurisdiction and be eligible for parole is to reduce the minimum sentence. And that sounds in habeas under HEC. Now to the extent that it doesn't, and I'm way over my time, I'm certainly happy to address the substantive factors within the Graham decision and why Mr. Kitchen's 42-year sentence does not violate Graham. But I would be asking for the court's indulgence in doing so because I'm eight minutes over my time. I think we'll hear from the other side and if it comes up, we'll cover it. You've got your rebuttal time. Thank you, Your Honor. Good morning, and may it please the court, Josh Niemann on behalf of Plaintiff Michael Kitchen. As pro bono counsel for Mr. Kitchen, I just wanted to provide the court with some context for this case before I get into the specific HEC and Graham arguments that counsel raised. Mr. Kitchen will be 54 years old next week and has been incarcerated his entire adult life. He's asking this court for limited relief in the form of an expedited parole hearing. Defendants have raised a number of procedural arguments in an attempt to prevent Mr. Kitchen from receiving this discreet form of relief. And like I said, before I jump into those procedural arguments, I'd like to begin with the merits of Mr. Kitchen's Graham claim that opposing counsel previewed. First, Graham is applicable to Mr. Kitchen notwithstanding that he's serving a term of year sentence. Courts across the country have held that Graham is not limited to formal life sentences. As those courts have held, limiting Graham to a formal life sentence would elevate formal resubstance and would allow courts to circumvent Graham. I believe the district court gave an example of a 100 year sentence that would deny a juvenile a meaningful opportunity for release, but would technically comply with an interpretation of Graham that limits its holding to a formal life sentence. Notably, defendants concede this point in their reply brief, stating that Graham can apply to an extremely lengthy term of year sentence. What do you think the sentence should have been here? Handed down back in 1987 with the... What would have passed constitutional muster? If the judge had said 35 years to 60, would that have been okay? We wouldn't be here. It's a good question. Wasn't it a vital question? It's the question, yes. I mean, hear what we have. In essence, 35 years may or may not already... We may already be beyond the point in which he has a meaningful opportunity release because there's unrebutted evidence in the record that Mr. Kitchen's most likely life expectancy is between 60 and 65. So it might have been 30 years would have been the tipping point. There's some tipping point, right? I guess. I don't know what it is, but okay, let's assume there's a tipping point. Doesn't that necessarily mean that you are challenging the sentence that he got? So you're saying the words that came out of the mouth of the judge should not have been 42 years to 60. It should have been blank years to 60. And if it's blank years, then under heck, that's a habeas challenge, right? I would disagree. What we're challenging is the operation of the Michigan Parole Jurisdiction Statute, the fact that it prevents any consideration at all for release before the conclusion of the minimum sentence. So yeah, he could have given... But I thought it was an as-applied challenge to your client.  So then we have to look at the way it operates on your client, and it was 42 years, which you have a cause of action because, as you're saying, it was 42 years. Because the words that were uttered at sentencing was 42 years, you have a cause of action, right? If the judge had said 15 years, you would not have had a cause of action. So then the question is, where would you bring this cause of action? I would say if the terms on what term of years was uttered at the sentencing, I don't see how it can be a 1983 claim. Well, it's the interplay of both, right? It's the interplay of what the judge said, the minimum sentences, and what the Michigan Parole Eligibility Statute calls for. If the Parole Eligibility Statute called for something analogous to the federal scheme, where you can get a parole hearing one-third into your sentence, then the sentencing judges, what he uttered at sentencing wouldn't be quite as consequential. I agree it's an indirect... So is your claim that the statute is unconstitutional to the extent that it ties parole eligibility to serving a minimum term of years? As applied to Mr. Kitchen, when that interplay of those two operate to deprive him of a meaningful opportunity for release, yes. How is your position consistent with Virginia versus LeBlanc? Because there the challenge was to what they called the geriatric release program, and I would have thought they could have made the same exact argument. We're not challenging the sentence. We're just challenging the fact that this geriatric release program doesn't allow for his release until he's much older. But the court applied that thought, and it was a habeas case. So it seems to me that it was just, well, LeBlanc, all he had to do was bring a 1983 claim rather than a habeas claim, and the Supreme Court would have had to give him de novo review. I think you said, you took the words out of my mouth, that our key distinction with that case is that it was, in fact, a habeas case, and that's why that program... But wouldn't, I mean, so all he had to do was file a 1983? Do you admit that, or do you think that you can file both a habeas claim and a 1983 claim for the same exact thing, or do you think that every claim falls within one bucket or the other? And if it's the latter, it seems to me the Supreme Court's Edput decision is good evidence that this is a habeas type claim. I don't... My understanding is that he would only file one or the other. He'd be in the second bucket. Why isn't the Supreme Court's decision that this exact type of claim is under the habeas bucket suggest it should be? We're not seeking... I can't remember the exact details of the Virginia law, but we're not seeking an automatic geriatric release because he's, you know, in his mid-fifties. It was just that it was eligible. It was an eligibility program. I think there the difference would have been, I think the individual had a life sentence, and then they had this geriatric release program. I don't know if that affects things, but it seems to me you could have just... LeBlanc could have argued, you know, I'm just challenging... I just... Getting an injunction to somehow allow for release. Yeah, I mean, I can't speak to the, I guess, the plaintiff's strategy in that case, but our, you know, our position is that because under the Michigan statute, you only get... You know, and one other question, just out of curiosity. You cite a lot of state cases, and I suspect that's because people have recognized that it has to go through the state system and state habeas. Is there... I know we have two other cases, Hill, and are there a lot of cases dealing with this Graham-type claim in the 1983 context? The very fact that you cite so many state cases suggests to me it's habeas, too. I mean, I think you said it, you know, Hill in this very court was not habeas. You know, I think there is probably a mix of both. I can't... I don't know. I haven't done a survey of the exact breakdown, but I know... Well, part of Hill is habeas, right? Yeah, certain claims... Was it count two was a habeas count, and that... I mean, I think there's an important distinction in Hill between what was recognized as challenging just procedures, you know, and I'm not sure that Hill was all that helpful to your cause on that front. Well, I mean, I would... I believe it was count four in Hill that... That it's most analogous here, because that was the restoration of good time credits that actually advanced... It wasn't just the factors applied at the parole hearing. It actually advanced the date up several years, which is, you know, in essence what we're seeking here is an expedited parole hearing. In their language, I want to read from it, because it's... I mean, I think it's right on the head here. It says, the court in Hill held that a claim that merely seeks to hasten the date on which prisoners fall within the jurisdiction of the Michigan Parole Board is properly brought under 1983 and is not barred by HECC. And the rationale, which is the rationale we're employing here, is because the parole board retains discretion to grant or deny parole, and therefore, success would not necessarily spell immediate release, which is what the standard was in Wilkinson in determining whether a case is properly brought under 1983 or should be brought in habeas. And in that case, similarly, the respondent in that case, William Dotson, said that the parole board was allowed to bring his case in 1983 because it concerned a challenge to parole eligibility rather than the procedures applied to his parole hearing. In that case, I believe they had prison officials apply to state law that actually moved back, delayed his parole hearing by several years in violation of his ex post facto rights, because it was imposed after his sentence. But in that case, where they held that the parole eligibility date is at issue, which is what we contend, you're allowed to bring the claim under 1983. And just briefly, I didn't have five minutes here, but... Can I ask, so this is moving a step even back earlier in the analysis, ask about the other side's forfeiture. So forfeiture is a discretionary doctrine. My question is, can you articulate any type of prejudice on your side through which this heck claim has been litigated? It seems like they raised it at the very beginning. You briefed it. The district court rejected the argument. And it wasn't raised again. And it wasn't kind of... The argument that it wasn't forfeit, it wasn't raised to reply. I mean, one significant factor in terms of forfeiture is if it's the way they have raised this claim has prejudiced your side in any way. Can you think of any articulable prejudice if we actually reach out and decide heck because it's properly briefed in this court? Sure. I mean, I think you noted in your questions to opposing counsel that it was them who raised it in their opening brief and conceded that it wasn't properly brought up. But as far as prejudice goes, their one mention of heck was back in, I want to say, early 2019. This case was litigated for three years after that with no mention of heck whatsoever. Does the factual development affect... Would you have developed the facts differently if you thought heck was still... Because usually we think of prejudice, if you raise it once and then you don't raise it, and then it's kind of like sandbagging the other side because you would have litigated your case differently. Is there any way you can think of that you might have litigated the case differently if you knew this heck issue was hanging out there? I'm not sure. It's a counterfactual I hadn't considered. I mean, it wasn't included in their answer so we kind of... In the three years I've been on this case, it was the first I ever saw of it. This was after I was appointed. After all that, it was brought up for the first time in their appellate brief. So I could have done things differently in discovery. We propounded certain requests and took certain depositions. We may have done things differently. I can't say for certain, but it was just something that never crossed our minds because it was something that never occurred in the district court. But I understand your point. Just briefly, turning to the merits of the Graham claim. They had previously cited the two cases, Bunch and LeBlanc, which we discussed. But in determining whether Mr. Kitchen has actually proven his Graham claim, it's important to understand the posture of this case I think. To begin, defendants expressly stated in the district court that the life expectancy approach is the proper approach to use in evaluating a Graham claim. It was the approach that defendants used in arguing against his claim. They can't now on appeal argue that the life expectancy approach is not a workable standard for what constitutes a meaningful... But you, under that approach, there's no dispute that he will receive parole before his life expectancy concludes. But you want to expand Graham in a different way. You want to say that it's not a meaningful opportunity to obtain release. It's a meaningful opportunity to have a meaningful life outside of prison. And I'm not certain courts are designed to determine what qualifies as a meaningful life. We have to give them enough time to have a meaningful life. I'm struggling with meaningful opportunity for release just asks, okay, we know the life expectancy tables. Will the parole date be after his life expectancy? But if you change it to opportunity for a meaningful life upon release, it's asking a philosophical question that I don't know that we're suited to answer. Well, now that I'm asking you to expand it because other courts have gone there, so you'd be following that persuasive, obviously not binding authority. But, I mean, in Montgomery versus Louisiana in 2016, the Supreme Court did contemplate their quote was some years of life outside of the prison walls for juvenile offenders. How many years are enough for us to say that you've had a meaningful life? I don't think that's a question that is even justiciable. It's like somebody who has cancer and has a year left on their life. I wouldn't say that they don't have a meaningful year left of life. And kind of the theory of the case is, well, we have to determine what is a meaningful existence out in the world. I think that's a weighty question. Sure. Understood. And I think that's the point that defendants raise in their brief. But to decide this case, I don't believe you need to go that far and establish, you know, what exactly do you need to be able to raise a family? Do you need to be able to have a career in order to comply with Graham? In this case, this is such a fact and sense of case where we have an undisputed factual record. Defendants didn't offer their expert of their own. They didn't challenge our expert. You have a completely undisputed record that this gentleman, Mr. Kitchen, is very likely to die by age 60. And he's, at the time of their very first parole hearing, which we contend isn't until 2029, he could have as little as less than a year. I mean, he wouldn't get out until... But if we adopted a bright line rule that as long as your parole date will come before your life expectancy, that's enough. It seems to me under your facts, we lose. And that's why you have to adopt an approach that it really has to be that one year under life expectancy is not enough for a meaningful life. Yeah. I mean, I think you could say that a year to two years is not enough and that's sufficient to decide this case on these facts. I understand the sort of hesitation to go further than that and draw a bright line rule or get into these sort of weighty questions about what constitutes meaningfulness. And our position is that you don't need to do that here to resolve this case. Again, it's an undisputed record where you've got a guy who very well will be turning 60 in the year that he's released. And our undisputed expert has said that that's the most likely period of time when he will die. So we're coming up right against when he may die. So we're not even asking you to say he's got to get out in order to raise a family and all that and have a career. We just don't want his dying breaths to be as soon as he gets out because that's the sort of geriatric release that courts have frowned upon generally. So that's our position on it. And I see I'm running low on time here and unless the court has any further questions, I will rest. Thank you very much for your rebuttal. Thank you, Your Honors. And I'm actually going to start with his last point first if I may. I think, Judge Murphy, you hit the nail square on the head. What the district court's opinion effectively does is it's asking this court to determine what is meaningful beyond prison. Now courts are very well equipped to determine whether the procedures applied to parole are fair to juvenile offenders, whether sentencing procedures are fair to juvenile defenders. Whether the context is 1983 or habeas, we'll set that aside. What courts are absolutely ill-equipped to decide is what constitutes a meaningful life beyond the prison walls. Now the unrebutted testimony... Is there any way it can be a year? You can have guardrails, right? We know one thing, it's got to be more than what this guy would get. I don't know whether that's true or not. And I do dispute Appley's characterization that Mr. Kitchen will be eligible in 2029. Our understanding is that he will be eligible in 2027 unless he has disciplinary credits. Whether he gets disciplinary time or not is effectively completely up to Mr. Kitchen. And he does argue in his brief that it's inevitable that a prisoner would get disciplinary time. That's not true. That is up to a prisoner just like committing a criminal offense is up to the person who commits it. But I will say this, courts are ill-equipped to make that quality determination. Now the unrebutted testimony is that if we go by Mr. Kitchen's expert and if we look at the specific life expectancy of Mr. Kitchen, not for African American males outside of prison, but for Mr. Kitchen, there's a 60% chance he lives to between 60 and 65. He will be eligible for parole when he's age 57 and I will concede, as Appley pointed out, he'll be about a month away from his 58th birthday. So we'll round that up and say 58. He would have effectively two years left or seven years based on the testimony of his own expert. And if the court's going to be in the position of deciding whether that's enough quality of life outside the prison walls, that extends Graham far beyond not only the language of Graham but the intent. What do you make of the state Supreme Court decisions? It seems quite categorical that they've expanded it. I don't think it's categorical. First of all, what Appley's citing as the great weight of authority is about a half dozen state court cases and one unpublished Pennsylvania District Court case. Are there any courts on the other side though? I have not looked at those. But what I will say is looking solely at the cases cited by Mr. Kitchen in the District Court, those cases, quite frankly, are all over the place. Judge Nalbandian, you asked specifically, is 30 years enough? And I think that counsel's response to that was very, very telling as to what direction this case law will take if the District Court is feeling like, well, maybe not. That's effectively what the District Court's decision does. How much time is a quality of life? One of those state court cases, Judge Murphy, said de facto life sentences for juvenile offenders is a minimum 30-year sentence. Other ones were looking at terms of 40 or even 50 years and saying, well, that's actually not a de facto life sentence because the prisoner will be eligible for parole before the expiration of his or her or the expected expiration of his or her life. We never really know what it's going to be, but the expected. So those state court cases, even when they have said that Graham prohibits a term of years that's an effective, or excuse me, a de facto life sentence, there's no consensus on what constitutes a de facto life sentence. And in this case, the 42-year sentence, by the testimony of their own expert, does not constitute a de facto life sentence. But you would agree, though, a de facto life sentence would be 150 years? I think there's no question. Aren't there some limits in life expectancy tables? It seems to me the key point here would be that even under his own evidence... Yes. Yes. Yes. Absolutely, Your Honor. A 100-year or 150-year sentence effectively is a life sentence. I mean, if we look just at the limited number of people who live to be over 100 centenarians, very, very minimal in the general population. I think that we can all agree on that. But when we start drawing lines based on the individual's life expectancy, that's very different. And one of the other comments you made I think is very timely as well. So if we're looking at a prisoner who is a youthful offender and that prisoner has terminal cancer, does that mean now that that prisoner can file a 1983 action, get the parole date moved up because the medical evidence shows that that prisoner will not have a, in quote, quality life beyond prison because it will be limited in terms of years? What about a prisoner with a heart condition? And as a practical matter, it's an unworkable principle of law or rule of law to apply in this circuit because it also incentivizes prisoners to create a fact record. If I go to the prison infirmary every day for a week complaining of chest pains and I file a 1983 action challenging the duration of my sentence or let's, for the sake of argument, say just the period of eligibility for parole, I've effectively created a fact argument. Even if those medical appointments don't show anything, I've got something that I can take and say, listen, I've gone every day, or excuse me, every week for 10 years. I have a heart condition that shortens my lifespan and I need to be paroled now. Now the court wouldn't be able to decide that itself, but it would effectively be a triable issue in any of these cases. So it creates an incentive structure for prisoners to create that record. Okay, counsel. Thank you, Your Honor. Thank you both. Thank you, Mr. Zayman, for taking this case pro bono. We appreciate your efforts.